UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. **25-CR-20452-MARTINEZ/SANCHEZ**
18 U.S.C. § 1956(h)

UNITED STATES OF AMERICA

v.

IRAKLI NAKASHIDZE,

        Defendant.
_____/

FILED BY _____BM_____ D.C.
Oct 14, 2025
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

## INFORMATION

The United States Attorney charges that:

### GENERAL ALLEGATIONS

At all times material to this Information:

#### Commercial Insurance

1. Private insurers offered various individual and family insurance plans that covered medical costs such as durable medical equipment ("DME") and wound dressings in accordance with their policies and state and federal law, including requirements that such services be medically necessary and provided as billed.

2. DME was equipment designed for repeated use for a medical purpose, such as orthotic braces and continuous glucose monitors. Wound dressings included alginate dressings intended to absorb exudate from wounds and promote tissue regeneration.

3. Commercial insurance plans offered by private insurers were "health care benefit programs" as defined by Title 18, United States Code, Section 24(b).

## The Medicare Program

4. The Medicare Program ("Medicare") was a federally funded program that provided free or below-cost health care benefits to certain individuals, primarily the elderly, blind, and disabled. The benefits available under Medicare were governed by federal statutes and regulations. The United States Department of Health and Human Services, through its agency, the Centers for Medicare and Medicaid Services ("CMS"), oversaw and administered Medicare. Individuals who received benefits under Medicare were commonly referred to as "beneficiaries."

5. Medicare was subdivided into multiple program "parts." Medicare Part A covered health services provided by hospitals, skilled nursing facilities, hospices, and home health agencies. Medicare Part B covered physician services and outpatient care, including an individual's access to DME and wound dressings. Medicare Part C provided beneficiaries with the option to receive their Medicare Part A and B benefits through Medicare Advantage Organizations ("MAOs"). Health care providers that provided and supplied items and services to beneficiaries, whether under Medicare Part A, B, or C, were referred to "providers."

6. Medicare would only pay for items and services that were medically necessary, eligible for reimbursement, and provided as represented. MAOs were required to provide beneficiaries with the same services and supplies offered under other Medicare parts and were bound by the same coverage criteria.

7. To obtain payment for services or treatment provided to a beneficiary enrolled in an MAO sponsored plan, providers were required to submit an itemized claim form to the MAO certifying that the contents of the form were true, correct, and complete, and that the form was prepared in compliance with the laws and regulations governing Medicare. The providers were

also required to certify that the services billed were medically necessary and were provided as billed.

8.     Medicare, including Medicare Part C, was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b).

### The Federal Employees Health Benefits Program

9.     The Federal Employees Health Benefits Program ("FEHBP") was a federally funded program that provided health care benefits to federal employees, retirees, and their eligible spouses and dependent children. The U.S. Office of Personnel Management ("OPM") administered the FEHBP. Payroll offices from all federal agencies collected health insurance premiums and forwarded these funds to OPM's revolving trust account maintained at the U.S. Treasury. OPM contracted with numerous private health insurance plans. These insurance plans processed and paid health care claims on behalf of the FEHBP. OPM reimbursed the contracted health insurance plans for 100% of the health care claims they paid, and 100% of their administrative expenses, plus a negotiated service charge.

10.    The FEHBP only covered claims for DME and wound dressings that were medically necessary and actually provided.

11.    The FEHBP was a "health care benefit program" as defined by Title 18, United States Code, Section 24(b).

### The Defendant and Related Entities and Individuals

12.    ABRH Care, Inc. ("ABRH") was a DME company incorporated under the laws of Florida with its principal place of business located at 201 South Biscayne Boulevard, Suite 2830, Miami, Florida. ABRH billed commercial insurers, MAOs, and FEHBP plans for millions of

dollars of DME and wound dressings that were medically unnecessary, ineligible for reimbursement, and not provided as claimed.

13. Defendant **IRAKLI NAKASHIDZE**, a Georgian citizen residing in Miami-Dade County, owned and operated ABRH and was the sole signatory on its corporate bank accounts.

14. Co-Conspirator 1 was an individual who directed **IRAKLI NAKASHIDZE** to conduct transactions from ABRH's bank accounts.

15. Co-Conspirator 2 was an individual who directed **IRAKLI NAKASHIDZE** to conduct transactions from ABRH's bank accounts.

## COUNT 1
## Conspiracy to Commit Money Laundering
## (18 U.S.C. § 1956(h))

16. From in or around January 2025, and continuing through in or around June 2025, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendant,

**IRAKLI NAKASHIDZE,**

did knowingly and voluntarily combine, conspire, confederate, and agree with Co-Conspirator 1, Co-Conspirator 2, and others known and unknown to the United States Attorney, to knowingly engage in a monetary transaction by, through, and to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, such property being derived from specified unlawful activity, knowing that the property involved in the monetary transaction was derived from some form of unlawful activity, in violation of Title 18, United States Code, Section 1957(a).

It is further alleged that the specified unlawful activities are health care fraud, in violation of Title 18, United States Code, Section 1347, and conspiracy to commit health care fraud, in

violation of Title 18, United States Code, Section 1349.

All in violation of Title 18, United States Code, Section 1956(h).

## FORFEITURE

1. The allegations of this Information are hereby re-alleged and by this reference fully incorporated herein for the purpose of alleging forfeiture to the United States of certain property in which the defendant, **IRAKLI NAKASHIDZE**, has an interest.

2. Upon conviction of a violation of Title 18, United States Code, Section 1956(h), as alleged in this Information, the defendant shall forfeit to the United States, any property, real or personal, involved in the offense and any property traceable to such property, pursuant to Title 18, United States Code, Section 982(a)(1).

All pursuant to Title 18, United States Code, Section 982(a)(1) and the procedures set forth at Title 21, United States Code, Section 853, as incorporated by Title 18, United States Code, Section 982(b)(1).

JASON A. REDING QUIÑONES
UNITED STATES ATTORNEY

LORINDA LARYEA
ACTING CHIEF, FRAUD SECTION
U.S. DEPARTMENT OF JUSTICE

CLAIRE M. HORRELL
TRIAL ATTORNEY
CRIMINAL DIVISION, FRAUD SECTION
U.S. DEPARTMENT OF JUSTICE

5

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

CASE NO.: **25-CR-20452-MARTINEZ/SANCHEZ**

v.

IRAKLI NAKASHIDZE                    /

**CERTIFICATE OF TRIAL ATTORNEY**

**Superseding Case Information:**
New Defendant(s) (Yes or No) _____
Number of New Defendants _____
Total number of new counts _____

**Court Division** (select one)
- [x] Miami
- [ ] Key West
- [ ] FTP
- [ ] FTL
- [ ] WPB

I do hereby certify that:

1. I have carefully considered the allegations of the Indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.
2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, 28 U.S.C. §3161.
3. Interpreter: (Yes or No) Yes
   List language and/or dialect: Georgian
4. This case will take __0__ days for the parties to try.
5. Please check appropriate category and type of offense listed below:

   (Check only one)
   - I  [x] 0 to 5 days
   - II [ ] 6 to 10 days
   - III [ ] 11 to 20 days
   - IV [ ] 21 to 60 days
   - V  [ ] 61 days and over

   (Check only one)
   - [ ] Petty
   - [ ] Minor
   - [ ] Misdemeanor
   - [x] Felony

6. Has this case been previously filed in this District Court? (Yes or No) No
   If yes, Judge _____ Case No. _____
7. Has a complaint been filed in this matter? (Yes or No) Yes
   If yes, Judge Ellen Francis D'Angelo    Magistrate Case No. 25-MJ-03116-EFD
8. Does this case relate to a previously filed matter in this District Court? (Yes or No) No
   If yes, Judge _____ Case No. _____
9. Defendant(s) in federal custody as of June 4, 2025
10. Defendant(s) in state custody as of _____
11. Rule 20 from the _____ District of _____
12. Is this a potential death penalty case? (Yes or No) No
13. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to October 3, 2019 (Mag. Judge Jared M. Strauss)? (Yes or No) No
14. Did this matter involve the participation of or consultation with Magistrate Judge Eduardo I. Sanchez during his tenure at the U.S. Attorney's Office, which concluded on January 22, 2023? No
15. Did this matter involve the participation of or consultation with Magistrate Judge Marty Fulgueira Elfenbein during her tenure at the U.S. Attorney's Office, which concluded on March 5, 2024? No
16. Did this matter involve the participation of or consultation with Magistrate Judge Ellen F. D'Angelo during her tenure at the U.S. Attorney's Office, which concluded on October 7, 2024? No

By: _____
Claire Horrell
DOJ Trial Attorney
SDFL Court ID No. A5503342

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name**: Irakli Nakashidze

**Case No**: _____

Count #: 1

Conspiracy to Commit Money Laundering

Title 18, United States Code, Section 1956(h)
* **Max. Term of Imprisonment: 10 years**
* **Mandatory Min. Term of Imprisonment (if applicable):**
* **Max. Supervised Release: 3 years**
* **Max. Fine: up to $250,000.00**

*Refers only to possible term of incarceration, supervised release and fines.   It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.

AO 455 (Rev. 01/09) Waiver of an Indictment

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| | |
|---|---|
| United States of America ) | |
| v. ) | Case No. **25-CR-20452-MARTINEZ/SANCHEZ** |
| IRAKLI NAKASHIDZE, ) | |
| ) | |
| *Defendant* ) | |

## WAIVER OF AN INDICTMENT

I understand that I have been accused of one or more offenses punishable by imprisonment for more than one year. I was advised in open court of my rights and the nature of the proposed charges against me.

After receiving this advice, I waive my right to prosecution by indictment and consent to prosecution by information.

Date: _____

_____
*Defendant's signature*

_____
*Signature of defendant's attorney*

Tony Mirvis, Esq.
*Printed name of defendant's attorney*

_____
*Judge's signature*

_____
*Judge's printed name and title*